**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TF GLOBAL MARKETS (AUST) LIMITED and ACG MANAGEMENT SOLUTIONS LLC<br><br>      Plaintiffs,<br><br>v.<br><br>JAMES SORENSON,<br><br>      Defendant. | No. 21-cv-00208<br>Judge Franklin U. Valderrama |

**MEMORANDUM OPINION AND ORDER**

Plaintiff TF Global Markets (Aust) Limited (TF Aust) is an online brokerage firm in the financial services and technology industry. R. 1, Compl. ¶ 7.[1] Plaintiff ACG Management Solutions LLC (ACG) (together with TF Aust, Plaintiffs) is a wholly owned subsidiary of TF Aust that provides support for TF Aust. *Id.* ¶ 8. Defendant James Sorenson was employed by Plaintiffs as a Senior Network Architect and had access to Plaintiffs' confidential and proprietary information. *Id.* As a condition of his employment, Defendant was required to sign employment agreements containing non-disclosure and property return provisions. *Id.* ¶ 10. Eight months after signing his latest employment agreement, Defendant resigned and went to work for one of Plaintiffs' competitors. *Id.* ¶¶ 10, 16. After discovering that

---

[1]Citations to the docket are indicated by "R." followed by the docket number or filing name, and where necessary, a page or paragraph citation.

Defendant had Plaintiffs' confidential information and refused to return it, Plaintiffs filed this lawsuit against Defendant asserting claims for: breach of contract (Count I); misappropriation of trade secrets under the Illinois Trade Secrets Act (ITSA), 765 ILCS 1065, *et seq*; (Count II); conversion (Count III); misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA), 18 U.S.C. §§ 1831–39 (Count IV); and breach of fiduciary duty. (Count V). *See* Compl. Defendant moves to dismiss the Complaint for failure to state a claim. R. 8, Mot. Dismiss. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## Background

TF Aust is an online brokerage firm in the financial services and technology industry operating under the trade name and brand ThinkMarkets.[2] Compl. ¶ 7. ACG is a wholly owned subsidiary of TF Aust that provides support for TF Aust. *Id*. ¶ 8. Defendant worked for Plaintiffs from December 14, 2015 to October 2, 2020. *Id*. ¶ 9. Defendant's most recent role was Senior Network Architect, in which he had access to Plaintiffs' confidential and proprietary information, and trade secrets. *Id*. This confidential information included code, confidential trading strategies, and information technology developments designed to improve Plaintiffs' business. *Id*.

Plaintiffs required their employees to sign employment agreements containing non-disclosure and property return provisions. Compl. ¶ 10. On February 13, 2020, Defendant signed his most recent employment agreement (the Agreement). *Id*. ¶¶ 10,

---

[2]The Court accepts as true all of the well-pleaded facts in the Complaint and draws all reasonable inferences in favor of Plaintiffs. *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017).

43. Section 3(a) of the Agreement required Defendant to return all Plaintiffs' property within three days of the termination of his employment. *Id.* ¶ 44. Additionally, in Section 5(a), Defendant agreed not to use any confidential information other than in furtherance of his legitimate job duties. *Id.* ¶ 46.

On October 2, 2020, Defendant resigned without notice. Compl. ¶ 62. Four days later, Plaintiffs sent Defendant a letter requesting the return of all of Plaintiffs' property and reminding him of his obligations under the Agreement, including his obligation not to disclose any confidential information or trade secrets. *Id.* ¶ 63. Defendant did not respond. *Id.* ¶ 64.

Three months later, Plaintiffs learned Defendant had taken a job with a competitor, IS Group. Compl. ¶¶ 63–65. IS Group not only competes with Plaintiffs in the same industry, but also is currently engaged in ongoing litigation with Plaintiffs. *Id.* ¶ 65. As a result, Plaintiffs immediately brought in a forensic investigator to investigate Defendant's network activity prior to his departure. *Id.* ¶¶ 66–69. The investigation revealed that Defendant had dozens of messages in his Outlook email that were not directly related to his job duties, and which he had no legitimate business reason to have. *Id.* ¶ 70. These emails included an email from Plaintiffs' external counsel, not sent to Defendant, discussing highly sensitive litigation plans, analysis, and strategies concerning Plaintiffs' litigation with IS Group. *Id.* ¶ 71. Additionally, the investigation found multiple emails containing confidential, proprietary, and sensitive information, including emails relating to Plaintiffs' efforts to launch new business in Japan and Australia. *Id.* ¶ 72.

On January 11, 2021, Plaintiffs sent Defendant a second letter demanding the return of their confidential and trade secret information and also demanding that Defendant identify any computers, devices, or storage systems that he used to perform work for Plaintiffs and submit such devices to a third-party forensic firm for inspection. Compl. ¶ 85. Defendant has not agreed to any of these requests as of the filing of the Complaint. *Id.* ¶ 86.

Plaintiffs subsequently filed this lawsuit against Defendant asserting claims for: breach of contract (Count I); trade secret misappropriation under the ITSA (Count II); conversion (Count III); trade secret misappropriation under the DTSA (Count IV), and breach of fiduciary duty (Count V). Defendant moves to dismiss Plaintiffs' complaint for failure to state a claim. Mot. Dismiss. For the reasons that follow, the motion to dismiss is granted in part and denied in part.

## Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3D 811, 820 (7th Cir. 2009). To survive a motion to dismiss, a complaint needs only factual allegations, accepted as true, sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The

4

allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79.

## Analysis

### I. Breach of Contract (Count I)

Plaintiffs allege in Count I that Defendant entered into an employment agreement with them in which he agreed not to disclose, or use for any purpose other than in furtherance of his legitimate job duties, Plaintiffs' confidential and trade secret information. Compl. ¶ 91. Plaintiffs also allege that Defendant agreed to return all of Plaintiffs' property and confidential information. Compl. ¶¶ 88, 91. Defendant, however, has failed to do so. *Id.* ¶ 92.

To state a breach of contract claim in Illinois, "a party must allege (1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Hongbo Han v. United Cont'l Holdings, Inc.*, 762 F.3d 598, 600 (7th Cir. 2014) (internal quotation marks omitted). "Under Illinois law, a legally enforceable contract is an exchange, and the elements of a contract include offer, acceptance, and consideration." *LKQ Corp. v. Thrasher*, 785 F. Supp. 2d 737, 742 (N.D. Ill. 2011).

Defendant argues that Plaintiffs have failed to allege a valid and enforceable contract—and specifically, a valid restrictive covenant—because the Agreement was not supported by adequate consideration. R. 9, Memo. Dismiss at 7 (citing *Brown & Brown, Inc., v. Mudron*, 887 N.E. 2d 437, 440 (Ill. App. Ct. 2008)). Defendant argues that under Illinois law, employment for less than two years is inadequate

5

consideration to support a restrictive covenant. *Id.* at 7–8 (citing *Instant Tech, LLC v. DeFazio*, 40 F. Supp. 3d 989, 1010 (N.D. Ill. 2014). Since he was only employed for eight months after signing the Agreement, reasons Defendant, and no other consideration for the Agreement is alleged, the Agreement fails for lack of consideration. *Id*. Plaintiffs retort that the vast majority of courts within the Seventh Circuit have rejected a bright line rule as to a specific length of continued employment. R. 17, Resp. at 2 (collecting cases). Moreover, Plaintiffs point out that Defendant resigned instead of being terminated, which weighs in favor of a finding that Defendant's eight-month period of continued employment is sufficient consideration. *Id.* at 3 (citing, among other cases, *R.J. O'brien & Assocs., LLC v. Williamson*, 2016 WL 930628, at *4 (N.D. Ill. Mar. 10, 2016)).

Generally, "courts do not inquire into the adequacy of consideration." *McGinnis v. OAG Motorcycle Ventures, Inc.*, 35 N.E. 2d. 1076, 1083 (Ill. Ct. 2015). Post-employment restrictive covenants, however, are an exception to the general rule. *Id*. This is so "because it has been recognized that a promise of continued employment may be an illusory benefit where the employment is at-will." *Id*. Illinois courts have held that, "continued employment for a substantial period is sufficient consideration to support an employment agreement." *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 715 (N.D. Ill. 2014).

"Illinois courts have *generally* held that [at least] two years or more of continued employment constitutes adequate consideration." *Allied Waste Servs. of N. Am., LLC*, 177 F. Supp. 3d at 1107 (internal quotation marks and citations omitted

and emphasis added). The Illinois Supreme Court, however, has not decided the issue. "Where the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015).

As Plaintiffs point out, unlike Illinois Appellate courts, "most courts in the Northern District of Illinois that have addressed the issue have rejected the two-year bright-line rule in favor of a more fact-specific approach." *Guaranteed Rate, Inc. v. Wilson*, 2020 WL 4736395, at *3 (N.D. Ill. Aug. 14, 2020). Those courts reason that the Illinois Supreme Court would eschew a bright line test and instead apply a fact-specific approach. *Indus. Packaging Supplies, Inc., v. Channell*, 2018 WL 2560993, *11–12 (N.D. Ill June 4, 2018). For example, in *Channell*, the court noted that while the Illinois Supreme Court has not addressed this issue, that court "has stressed the importance of using a fact-specific approach in a similar context." *Id*. The *Channell* court observed that in *Reliable Fire Equip. Co. v. Arredondo*, 965 N.E.2d 393 (Ill. 2011), the Illinois Supreme Court rejected "the rigid tests developed by the appellate courts to determine whether an employer has a legitimate business interest in imposing a restrictive covenant—an inquiry necessary to determine whether the covenant is reasonable." *Id*. *5. Thus, the *Channell* court applied a fact-specific approach. *Id*. Likewise, in *Guaranteed Rate*, the court found that it would be improper to only apply a two-year bright line test because "[i]n short, there is nothing particularly significant about the term of 24 months that should elevate it to a *per se*

7

minimum requirement." *Guaranteed Rate*, 2020 WL 4736395, at *3 (internal quotation marks and citation omitted). As such, the court found that "[k]ey factual circumstance surrounding the employment agreement such as the conditions of employment, voluntary resignation, employees raises and bonuses, must be considered on a case-by-case basis[,]" and thus, "given the importance of considering the totality of circumstances . . . it would be inappropriate to rule on adequate consideration on this Rule 12(b)(6) motion." *Id.*

As Plaintiffs point out, numerous courts applying the fact-specific approach consider the fact that the former employee resigned as a factor weighing in favor of a finding that the former employer has alleged sufficient consideration. *See Williamson*, 2016 WL 930628 at *3–4 (denying motion for summary judgment where the former employee quit after one year to work for a competitor); *Stericycle, Inc. v. Simota*, 2017 WL 4742197, at *6 (N.D. Ill. Oct. 20, 2017) (recognizing significance of resignation versus termination and finding consideration sufficiently pled where employee resigned after thirteen months); *Montel Aetnastak, Inc.*, 998 F. Supp. 2d at 716 ("[B]oth the length of her term of employment [(fifteen months)], along with her voluntary resignation, lead the Court to conclude that she was provided with a 'substantial period' of employment.").

This Court joins the majority view and rejects application of a bright-line rule and favors a fact-specific approach. Applying this fact-specific approach, the Court agrees with Plaintiffs that they have sufficiently alleged consideration based on

Defendant's eight-month continuous employment for Plaintiffs from which he resigned.³

Because Defendant does not advance any other argument concerning the validity of the Agreement, at this stage, Plaintiffs' allegations are sufficient to state a claim. The Court turns now to Defendant's DTSA and ITSA claims arguments.

## II.     Illinois Trade Secrets Act (Count II)

In Count II, Plaintiffs allege that Defendant, in violation of the ITSA, misappropriated, threatened to misappropriate, or inevitably will misappropriate Plaintiffs' information for the benefit of his new employer, ISR Group. Compl. ¶¶ 101–02.

To state a claim under the ITSA, "a plaintiff must allege: (1) that the information at issue was a trade secret; (2) that it was misappropriated; and (3) that it was used in the defendants' business." *Fire 'Em Up, Inc. v. Technocarb Equip. (2004) Ltd.*, 799 F. Supp. 2d 846, 849 (N.D. Ill. 2011). "While it is true that specificity of concrete trade secrets is required to support a finding of misappropriation, the

---

³Plaintiffs also argue that they have alleged sufficient consideration because they rely not only upon Defendant's continued employment as consideration for the Agreement's restrictive covenants, but that (1) Plaintiffs allowed Defendant access to their confidential information in return for his execution of the Agreement, and (2) the Agreement contains an enhanced compensation provision in Section 7, not included in previous agreements, that provides Defendant with the opportunity to receive increased pay in exchange for providing at least thirty (30) days' notice of any resignation. Resp. at 4. (citing *Apex Physical Therapy, LLC v. Ball*, 2017 WL 3130241 at *3 (S.D. Ill. July 24, 2017)). Plaintiffs also assert that Defendant received adequate consideration because. Resp. at 4. Because the Court finds that Plaintiffs have sufficiently alleged consideration based on the length of Defendant's employment, the Court does not address these arguments.

9

alleged trade secrets need not be disclosed in detail in a complaint to survive a motion to dismiss." *Id.* (internal quotation marks and citation omitted).

Defendant argues that Plaintiffs fail to state a claim under the ITSA because Plaintiffs have not sufficiently alleged misappropriation. Memo. Dismiss at 11, 13. Defendant maintains that the allegation that Defendant was involved in the development of trade secrets or had access to them cannot support an ITSA claim because he had access to the information in the normal course of business. *Id.* at 12. Defendant additionally contends that Plaintiffs do not allege that Defendant ever unlawfully retained, saved, forwarded, or otherwise disclosed any trade secrets. Plaintiffs disagree, noting that the Complaint alleges that Defendant exceeded his authority to acquire Plaintiffs' proprietary information. Resp. at 6 & n.2 (citing *Lane v. Brocq*, 2016 WL 1271051, at *13 (N.D. Ill. Mar. 28, 2016) (while "proving unauthorized 'use' of a trade secret is one means of establishing liability under the ITSA, it is not the only means; liability also attaches for improper 'acquisition' or 'disclosure' of a trade secret") (citing 765 ILCS 1065/2(b)(1)–(2)). Plaintiffs submit that the Complaint alleges that a forensic examination of Defendant's e-mail inbox revealed that Defendant had, without authorization, numerous sensitive emails divulging confidential and proprietary competitive business information to which Defendant was not an intended recipient on any of these e-mails. *Id.*

The Court finds, viewing the allegations in the light most favorable to Plaintiffs, and drawing reasonable inferences therefrom, that Plaintiffs have plausibly alleged misappropriation. Plaintiffs allege that Defendant retained without

10

authorization numerous sensitive e-mails, and deleted a key proprietary code repository to cause harm and/or cover his tracks shortly before his last day and that he commenced work in a similar role with Plaintiffs' global competitor and litigation adversary. *See Insight Glob., LLC v. Borchardt*, 2018 WL 2267810, at *3–4 (N.D. Ill. May 17, 2018) (denying motion to dismiss because the "facts alleged in the Complaint of [defendant's] immediate employment with a competitor doing the same type of work, when coupled with evidence that she took materials from the company prior to leaving, are sufficient to infer the possibility that Borchardt misappropriated trade secrets"). The Court turns now to Plaintiffs' DTSA claim.

### III. Defend Trade Secrets Act (Count IV)

Plaintiffs allege in Count IV that Defendant violated one or more provisions of the DTSA by misappropriating their trade secrets. Compl. ¶¶ 117–23.

"To state a claim for violation of the DTSA, the plaintiff must first allege facts sufficient to provide notice that the relevant information constitutes a trade secret[, and] . . . must sufficiently allege that the defendant has misappropriated the trade secret within the meaning of § 1836(b)(1)." *Packaging Corp. of Am., Inc.*, 419 F. Supp. 3d at 1065–66 (N.D. Ill. 2020). "The DTSA provides that misappropriation means the acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means." *In re Dealer Mgmt. Sys. Antitrust Litig.*, 362 F. Supp. 3d 558, 573 (N.D. Ill. 2019) (citing 18 U.S.C. § 1839(5)). "[T]he term 'improper' means (A) includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through

11

electronic or other means; and (B) does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

Defendant similarly argues that Plaintiffs fail to state a claim under the DTSA because Plaintiffs have not sufficiently alleged misappropriation. Memo. Dismiss at 12. As stated in the Court's ITSA discussion, *see supra* Section III, the Complaint plausibly alleges misappropriation. The Complaint alleges that Defendant exceeded his authority and had in his possession Plaintiffs' proprietary information. The Complaint also alleges that Defendant commenced work in a similar role with Plaintiffs' competitor IS Group. Taken together, and construing all reasonable inference in Plaintiffs' favor, the Court finds that at this stage, Plaintiffs have sufficiently alleged a DTSA claim. The Court now addresses Defendants preemption argument.

## IV. Conversion (Count III)

Plaintiffs allege in Count III that, pursuant to the Agreement between Defendant and Plaintiffs, Defendant agreed to return all of Plaintiffs' property; however, Defendant retained and wrongfully assumed control, dominion, and/or ownership over Plaintiffs' property causing Plaintiffs actual damages as a result of Defendant's acts of conversion. Compl. ¶¶ 109–13.

"To state a claim for conversion, a plaintiff must allege (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he has made a demand for possession of the property; and (4) defendant has wrongfully assumed control, dominion, or ownership of the

12

property without authorization." *Song v. PIL, L.L.C.*, 640 F. Supp. 2d 1011, 1017 (N.D. Ill. 2009).

Defendant argues the Plaintiffs' claim for conversion is preempted by the ITSA. Memo. Dismiss at 14. In response, Plaintiffs contend that because the conversion claim does not rely on trade secret misappropriation and goes beyond the pre-existing ITSA claim, the conversion claim is not preempted. Resp. at 11. Plaintiffs insist that the alleged converted property included property that was not a trade secret. *Id.* at 12 (citing *Charles Schwab & Co. v. Carter*, 2005 WL 2369815, at *4 (N.D. Ill. Sept. 27, 2005)).

The ITSA is "intended to displace conflicting tort, restitutionary, unfair competition and other laws of Illinois by providing civil remedies for misappropriation of a trade secret." *Spitz. v. Proven Winners N. Am., LLC*, 759 F.3d 724, 733 (7th Cir. 2014) (quoting 765 ILCS 1065/8). "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged trade secret does not fall within the Act's definition." *Id.* "However, ITSA does not preempt contractual remedies, whether or not based upon misappropriation of a trade secret, or other civil remedies that are not based upon misappropriation of a trade secret." *Am. Ctr. for Excellence in Surgical Assisting Inc. v. Cmty. Coll. Dist. 502,* 190 F. Supp. 3d 812, 822 (N.D. Ill. 2016). Put another way, a court will evaluate if a plaintiff's common law claims are "solely based on misappropriation of a trade secret, or do they seek recovery for wrongs beyond the mere misappropriation." *Id.* at 823 (internal quotation marks and citations omitted).

13

"There is some dispute as to whether ITSA preemption reaches information that is technically not considered a trade secret but nonetheless asserted to be confidential." *Cronimet Holdings, Inc. v. Keywell Metals, LLC*, 73 F. Supp. 3d 907, 919 (N.D. Ill. 2014). A string of recent cases have found that ITSA's preemption reaches "claims founded on the misappropriation of confidential information, regardless of whether such information qualifies as a trade secret or not." *Id.*; *see also Montel Aetnastak*, 998 F. Supp. 2d at 719–20. ("While Plaintiffs are correct that the ITSA does not preempt nonconfidential information, they have wholly failed to offer any argument that their claim is not based upon misappropriation of confidential information."); *RTC Indus., Inc. v. Haddon*, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007) ("[T]he test for a non-ITSA claim is not whether the plaintiff arguably could have brought an ITSA claim. Rather, the test is whether the plaintiff's claim would lie if the information at issue were nonconfidential."). Importantly, the Seventh Circuit held that "Illinois courts have read the preemptive language in the ITSA to cover claims that are essentially claims of trade secret misappropriation, even when the alleged 'trade secret' does not fall within the Act's definition." *Spitz*, 759 F.3d at 733.

Here, the Complaint alleges conversion of both trade secret and confidential information. The Complaint alleges that pursuant to the Agreement, Defendant agreed to return all of Plaintiffs' property, including, without limitation, Plaintiffs' confidential and trade secret information. Comp. ¶ 119. The Complaint also alleges that Defendant "has retained Plaintiffs' property for his own use and/or in manner

14

inconsistent with Plaintiffs' ownership of and rights in that property and with the intent to permanently deprive Plaintiffs of that property and/or negatively or irreparably altering that property so as to devalue or diminish that property and/or its nature/status as confidential, privileged, or trade secret information." *Id.* ¶ 110. Further, the Complaint alleges that Defendant's inbox contains a confidential, privileged, and work-product email from Adil Siddiqui, Senior Director Legal & Compliance for Plaintiffs based in the UK to its external counsel at a law firm in London about Plaintiffs' litigation with IS Group. *Id.* ¶ 19. Since the Complaint only alleges misappropriation of confidential and trade secret information, the conversion claim is preempted. *See Cronimet Holdings*, 73 F. Supp. 3d at 920 (ITSA preemption "cover[s] common law claims based on misappropriation of confidential information that does not meet the statutory definition of a trade secret"). The Court now turns to Defendant's breach of fiduciary duty argument.

### V. Breach of Fiduciary Duty (Count V)

In Count V, Plaintiffs allege that Defendant breached his fiduciary duty by deleting a certain IT repository in a proprietary application that stored proprietary code on or about the last day of his employment with Plaintiffs. Compl. ¶¶ 134–35.

#### A. Preemption

Defendant advances the same preemption argument for Plaintiffs' breach of fiduciary duty claim as he did for their conversion claim. Plaintiffs retort that ITSA does not preempt this claim because the fiduciary duty claims do not rely on trade secret misappropriation and instead pertain to actions Defendant took to harm

15

Plaintiffs' interests and place them at a competitive disadvantage. Resp. at 12. The Court agrees with Plaintiffs.

In Illinois, employees owe their employers a duty of loyalty. *Lawlor v. N. Am. Corp. of Illinois*, 983 N.E. 414, 434 (Ill. 2012). Here, the Complaint alleges that Defendant violated his duty of loyalty by deleting a "certain IT repository in a proprietary application that stored proprietary code. . . ." Compl. ¶¶ 134, 136. The Complaint further alleges that Defendant also violated his duty by improperly accessing Plaintiffs' confidential and trade secret information. *Id.* ¶ 136. To the extent that Plaintiffs breach of fiduciary duty is premised on Defendant's improperly accessing confidential and trade secret information, the Court finds those allegations preempted by the ITSA. *See supra* Section IV. However, Plaintiffs' allegations that Defendant deleted Plaintiffs' IT information do not rely on trade secret misappropriation and instead pertains to actions Defendant took to harm Plaintiffs' interests. *See Combined Metals of Chicago Ltd. P'ship v. Airtek, Inc.*, 985 F. Supp. 827, 830 (N.D. Ill. 1997) (finding ITSA did not preempt plaintiff's breach of fiduciary duty claim because the "ITSA has no effect on a claim that is not based on the misappropriation of a trade secret"); *see also LSC Dev., LLC v. Osborne*, 2019 WL 13073421, at *2 (N.D. Ill. May 24, 2019). Therefore, Plaintiffs' breach of fiduciary duty claim is not preempted.

### B. Failure to State a Claim

Defendant argues that Plaintiffs' breach of fiduciary duty claim fails for another reason: Plaintiffs fail to state a claim for breach of fiduciary duty because

16

nowhere in the Complaint do Plaintiffs plausibly allege that Defendant did anything improper. Memo. Dismiss at 15.

"To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must allege the following elements: "(1) a fiduciary duty on part of the defendant; (2) a breach of that duty; (3) damages; and (4) a proximate cause between the breach and the damages." *Pearson v. Garrett-Evangelical Theological Seminary, Inc.*, 790 F. Supp. 2d 759, 768–69 (N.D. Ill. 2011). As noted above, is undisputed that Defendant owed Plaintiffs a duty of loyalty. Plaintiffs allege that Defendant breached his duty of loyalty to Plaintiffs by deleting Plaintiffs' information and that as a proximate result of that breach, Plaintiffs were harmed. Compl. ¶¶ 134–37. Thus, at this juncture, the Court finds that Plaintiffs have adequately stated a breach of fiduciary duty claim. Whether the evidence bears these allegations out, is a fight for another day.

## Conclusion

For the foregoing reasons, the Court grants Defendant's motion to dismiss [8] in part and denies it in part. The Court grants the motion as to Plaintiffs' conversion claim (Count IV) and dismisses that count with prejudice, as the Court finds that amendment of this claim would be futile. *See Kibbons v. Taft Sch. Dist. 90*, 563 F. Supp. 3d 798, 811 n. 5 (N.D. Ill. 2021) (finding "the Court may dismiss a claim with prejudice if an amended complaint could not cure the deficiencies in the complaint, rendering the amendment futile"). The Court denies in all other respects Defendant's

17

motion. The Court lifts the stay of discovery [48], which has been referred to Magistrate Judge Jantz [20].

Dated: February 17, 2023

                                                                United States District Judge
                                                                Franklin U. Valderrama